IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | |
|---|---|
| IN RE: Seven Rivers Leasing Corporation, Inc., Debtor | Case No. 2:24-bk-72084<br>Ch.11 - Subchapter V |

ORDER AND OPINION GRANTING RELIEF
FROM AUTOMATIC STAY

On April 2, 2025, the Court heard two motions for relief from the automatic stay filed by First Financial Bank [FFB] at docket entries [42] and [50]. At the conclusion of the hearing, the Court requested that the parties file briefs regarding the legal effect of certain language in the foreclosure decree introduced into evidence during the hearing on the motion for relief filed at docket entry [42]. The Court also invited, but did not require, the parties to file briefs or submit case law regarding whether the interest asserted by the debtor in relation to the motion filed at docket entry [50] was sufficient to prevent the Court from granting relief from the stay.

On April 16, the debtor filed its brief. On April 22, FFB filed two responses to the debtor's brief—one pertaining to the docket entry [42] and the other to docket entry [50]. The debtor's reply briefs to FFB's two responses were filed April 28, 2025, at which time the Court took the matter under advisement. For the reasons stated herein, the Court grants both motions for relief from stay in the above-captioned bankruptcy case.

### I. Issue

The issue before the Court is whether FFB is entitled to relief from stay under 11 U.S.C. § 362(d) regarding the debtor's interest in two tracts of real property, one referred to as the "Blue Hangar" and the other as the "Yellow Hangar."

## II.   Background

On April 16, 2024, Seven Rivers Leasing Corporation, Inc. [Seven Rivers] filed a chapter 11 bankruptcy petition, assigned case number 2:24-bk-70617. Among other properties, Seven Rivers listed a fee simple interest in two tracts of real property:

1. 122 Flight Lane, Offices, Back Shops and Hangar Metal/Steel Building, 36,500 square feet.  This is the Yellow Hangar.
2. 132 Flight Lane, Mena Ar Offices, Back Shops and Hangar Metal/Steel Building 36,794 square feet.  This is the Blue Hangar.

The Blue Hangar and the Yellow Hangar were collateral for a secured debt owed to FFB pursuant to a note and mortgage dated October 22, 2007.  On its Statement of Financial Affairs, Seven Rivers listed pending litigation with FFB in the Circuit Court of Polk County.  On August 23, 2024, the first bankruptcy case was dismissed on *ex parte* order submitted by the U.S. Trustee.

On December 15, 2024, Seven Rivers filed the above-captioned case under subchapter V of chapter 11.  That same day, Rose Aircraft Services, Inc. [Rose], also filed a subchapter V chapter 11 case, which was assigned case number 2:24-bk-72085.  Subsequently, the Court entered an order approving the joint administration of the Seven Rivers case and the Rose case.  Seven Rivers and Rose are separate entities, but according to the principals of the debtors, they have common ownership and are operated and managed as a unit.  Specifically, both are owned by Brenda Sloan and Jonathan Rose.

## III.   Findings of Fact and Conclusions of Law

FFB seeks relief from stay to pursue its state court remedies against both the Blue and Yellow Hangar.  The Court will discuss the Blue Hangar and Yellow Hangar separately.

### A. The Blue Hangar

FFB argues that it is entitled to relief from stay because Seven Rivers lacks any equitable or legal interest in the property. The Court agrees, and it appears the debtor now agrees as well.

Seven Rivers' original schedule A/B listed a fee simple interest in the Blue Hangar, and schedule D listed a mortgage in favor of FFB and a tax lien in favor of the IRS. Rose's original schedules did not list any ownership interest in the Blue Hangar; rather, the schedules stated that Rose was a "lessee or sublessee of all facilities noted in the attachment to the Voluntary Petition detailing Part ** of the Voluntary Petition." The attachment to the Petition listed the Blue Hangar address and stated that the owner was Seven Rivers.

However, after the April 2 hearing, Seven Rivers changed its position regarding its asserted interest in the Blue Hangar. On April 28, Seven Rivers filed its reply briefs and, the same day, both Seven Rivers and Rose amended their schedules A/B. Seven Rivers' amended schedules re-stated an ownership interest in the Yellow Hangar but removed its claim of an interest in the Blue Hangar. This comports with the amendment made that same day in Rose to schedule A/B, which now asserts an interest in the Blue Hangar:

> Debtor [Rose] was party to a contract with First Financial Bank for the aircraft hangar located at 132 Flight Lane, Mena, Arkansas, usually known as the Blue Hangar. Debtor made all lease-to-purchase payments under the contract, but the Blue Hangar was never conveyed to the Debtor pursuant to its agreement with First Financial Bank.

(Dkt. No. 53, Case No. 2:24-bk-72085.)

Specifically, the subject interest arose from a Lease to Purchase Option Agreement entered into on November 22, 2011, between Rose, listed as "Buyer/Tenant" and FFB. It was signed by Brenda Sloan and Jonathan

3

Rose as officers of Rose. Seven Rivers was not a party to that agreement. FFB also offered a Special Warranty Deed into evidence, which conveyed the Blue Hangar to FFB in August 2017. Additionally, the debtor conceded in its reply brief that because of the testimony and documents offered into evidence at the April 2 hearing that "Seven Rivers may have no cognizable legal or equitable interest in the Blue Hangar." (Dkt. No. 96.)

Based on the evidence at the hearing, the amended schedules filed on April 28 in both Seven Rivers and Rose, and the debtor's reply briefs, the Court finds that the debtor lacks a legal or equitable interest in the Blue Hangar, and therefore, it is not property of the bankruptcy estate. Because the Court finds that the Blue Hangar is not property of Seven Rivers' bankruptcy estate, the Court grants the motion for relief from stay for cause under § 362(d) in this case. However, counsel for FFB represented to the Court during the April 2 hearing that if stay relief were to be granted in this case as to the Blue Hangar, FFB must next obtain relief from the stay in the Rose Aircraft case before it is free to proceed with in state court, and the Court agrees.

### B. The Yellow Hangar

Regarding the Yellow Hangar, FFB asserts it is entitled to relief from stay because the debtor did not file this bankruptcy case in good faith and the Yellow Hangar is not property of the estate. Regarding FFB's assertion of bad faith, the Court finds that there was not enough evidence to support such a finding. The debtor sought bankruptcy relief to save its ongoing business and reorganize its debts. Based on the record, confusion as to ownership was caused by the principals' operation of Seven Rivers and Rose as a unit, without separate bookkeeping, a mistake for which Sloan testified that she was accountable, and she was a credible witness. Regarding FFB's argument

that the Yellow Hangar is not property of the bankruptcy estate, the Court agrees and finds that the debtor's legal and equitable interests in the Yellow Hangar were terminated before Seven Rivers filed its current bankruptcy case for the following reasons.

On November 6, 2024, Polk County Circuit Court entered a Judgment and Foreclosure Decree [Judgment] in favor of FFB and against several defendants, including Seven Rivers. Among other things, the Judgment granted FFB a judgment *in rem* against the "Seven Rivers Real Property," the Yellow Hangar. (Bank Ex. 5, p. 28.) The Judgment found that FFB has "a valid, perfected, and enforceable lies [sic] on and against the Seven Rivers Real Property to secure the payment" of its judgment. The Judgment also provided:

> That if the judgment awarded herein above to FFB, as well as all lawful interest thereon, are not paid on or before the tenth (10th) day following the date of this Foreclosure Decree . . . then, as of and upon the eleventh (11th) day following the date of this Foreclosure Decree, *all rights, titles, claims, equities, interests, and estates of the above-named defendants*, and each of them, and anyone claiming by, through, or under any one or more of them, *in and to the Seven Rivers Real Property*, and every part thereof, *shall be and the same is hereby forever barred and foreclosed*, including all rights or possibility of appraisement, dower, curtesy, and homestead, and all legal or equitable rights of redemption.

(Bank Ex. 5, p. 29-30) (emphasis added). The Court will refer to this language as the "termination language."

The Judgment was not paid within the ten-day redemption period. On November 18, a Notice of Sale set a sale of the Yellow Hangar for December 17, 2024. Because Seven Rivers filed this bankruptcy case on December 15, no sale took place. The debtor raised three arguments in its post-hearing brief as to why the termination language did not extinguish the debtor's interest in the Yellow Hangar prior to Seven Rivers' bankruptcy filing, such

5

that the Yellow Hangar did not become property of the estate. For the reasons stated below, these arguments are unsuccessful.

### 1. A Commissioner's Sale Was Not Required to Terminate the Debtor's Legal Interest in the Yellow Hangar Under Arkansas Law

The debtor argued that because no sale took place and there is no other legal way to pass title, the debtor remains the legal owner of the Yellow Hangar. The assertion of a remaining legal ownership interest requires an analysis of property interests under state and federal law.

"'A debtor's bankruptcy estate consists of all legal and equitable interests of the debtor existing at the commencement of the bankruptcy case.'" *In re Ausburn*, 524 B.R. 816, 819 (Bankr. E.D. Ark. 2015) (quoting *In re Sugarloaf Prop., Inc.,* 286 B.R. 705, 708 (Bankr. E.D. Ark.2002) (citing 11 U.S.C. § 541(a)). "'Generally speaking, state law determines the nature and extent of a party's property interest for the purposes of Code provisions.'" *In re Ausburn*, 524 B.R. at 819 (quoting *Schinck v. Stephens* (*In re Stephens*), 221 B.R. 290, 292 (Bankr. D. Me. 1998) (citations omitted)).

Pursuant to Arkansas law, the Court finds that once the right of redemption expired, all of the debtor's rights to the Yellow Hangar were extinguished. *See In re Wells*, 536 B.R. 264, 268 (Bankr. E.D. Ark. 2015) (stating "[i]n Arkansas, in the context of a judicial foreclosure, the debtor no longer has an interest in real property once his rights of redemption have expired.") It is therefore unnecessary to decide what exact interest the debtor held by virtue of holding a deed for property subject to a mortgage under Arkansas law. *See Bank of Oak Grove v. Wilmot State Bank,* 648 S.W.2d 802, 803 (Ark. 1983) (recognizing "that parties to a mortgage have a duality of interest in mortgaged lands, our decisions suggest that legal title does, indeed, pass from the mortgagor to the mortgagee, the former retaining only an equitable interest, conditioned on payment of the indebtedness."); *but see City of Ft.*

*Smith v. Carter*, 270 S.W.3d 822, 826 (Ark. 2008) (stating that in *Bank of Oak Grove*, the court "declined to decide whether Arkansas is a lien theory or title theory state."). Whether legal or equitable, such interest was terminated at the expiration of the redemption period, prior to the bankruptcy filing.

Generally, the bankruptcy estate receives no greater interest than is held by the debtor:

> Although the debtor is still physically in possession of the property, the estate cannot hold a greater interest than that held by the debtor. *N.S. Garrott & Sons v. Union Planters National Bank* (*In re N.S. Garrott & Sons*), 772 F.2d 462, 466 (8th Cir. 1985). Mere possession of real property, whether under applicable bankruptcy or nonbankruptcy law, cannot be converted into any sort of permanent retention absent consent of the owner.

*In re Crime Free, Inc.,* 196 B.R. 116, 119 (Bankr. E.D. Ark. 1996) (granting stay relief).

Here, unlike in *In re Ausburn*, a chapter 13 case, there is no federal law that revives the terminated right of redemption:

> While "state law determines the nature and extent of a party's property interest[,] ... [t]he Code determines what property becomes property of the bankruptcy estate, but it does not, *routinely,* create or enhance property rights." *Stephens,* 221 B.R. at 292–93 (emphasis added) (citation omitted). However, if Congress so provides, "contrary provisions of state law must accordingly give way" to federal law. *Johnson v. First Nat'l Bank of Montevideo, Minn.* (*In re Johnson* ), 719 F.2d 270, 273 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Section 1322 of the Code acts in this manner and represents such an exercise of Congress's authority in relation to debtors' state law property rights.

*In re Ausburn*, 524 B.R. at 820. Section 1322 applies in chapter 13 cases— not chapter 11 cases— and there is no comparable section that applies in chapter 11 cases to similarly revive the debtor's right of redemption.

7

Therefore, based on the termination language in the Judgment, and despite no sale having occurred as of the bankruptcy filing, Seven Rivers retained nothing but a temporary possessory interest in the Yellow Hangar pending a commissioner's sale. Such an interest is enough to invoke the protection of the automatic stay, making it proper for FFB to seek relief before attempting to evict Seven Rivers from the hangar. *See In re Wells*, 536 B.R. at 269 (citing cases). However, it is not enough to prevent stay termination. *See In re Crime Free*, 196 B.R. at 119 (finding that if the debtor's only interest in property is possessory, "it is appropriate to afford relief from stay for the creditors to pursue their state-law remedies to remove debtor from possession.")

### 2. This Court is Bound by the Judgment, Including the Termination Language

Next, the debtor alleged that there is no basis in any Arkansas statute for the termination language. This argument fails for two reasons. First, the extinguishment of rights upon expiration of redemption period in the Judgment is consistent with Arkansas case law as cited above; second, even if it was not, this Court is bound by the state court order under the *Rooker-Feldman* doctrine, absent a code provision to the contrary. *See Jewell v. Lewis* (*In re Lewis*), 637 B.R. 832, 851 (Bankr. W.D. Ark. 2022) (quoting *Hageman v. Barton*, 817 F.3d 611, 614 (8th Cir. 2016) for the proposition that "[t]he *Rooker-Feldman* doctrine precludes lower federal courts from exercising jurisdiction over actions seeking review of, or relief from, state court judgments.") To the extent Seven Rivers believes the state court erred by entering the Judgment with the termination language, its remedy was to appeal the Judgment.

### 3. The Termination Language Is Not an Impermissible Ipso Facto Clause

Lastly, the debtor argued that the termination language is an unenforceable ipso facto clause. Seven Rivers contends that "the [l]anguage can only be effective because of the existence of the bankruptcy case, purporting to remove from the bankruptcy estate *ab initio* Seven Rivers' rights in and to the Yellow Hangar without the [d]ecree ever having been executed." (Dkt. No. 88.)

The debtor cited no authority to support the position that language in a state court order or decree (rather than in a contract or other agreement) can be an ipso facto clause and, regardless, the language in the Judgment did not reference the effect of a bankruptcy filing. "An ipso facto clause is a clause in a contract or lease 'that modif[ies] the relationship of contracting parties *due to the filing of a bankruptcy petition.*'" *In re AMR Corp.*, 485 B.R. 279, 296 (Bankr. S.D.N.Y. 2013) (quoting *Reloeb Co. v. LTV Corp.* (*In re Chateaugay Corp.*), 1993 WL 159969, at *4–5 (S.D.N.Y. May 10, 1993)). "An ipso facto clause is a contractual or other provision that results in a loss of property rights or the elimination or limitation of obligations that existed prior to the commencement of a bankruptcy *which loss, elimination or limitation occurs by reason of the debtor's bankruptcy* (or a debtor's insolvency or financial condition or the appointment for a debtor of a custodian—triggers not relevant to the Motions)." *In re Fort Worth Osteopathic Hosp., Inc.*, 387 B.R. 706, 711 (Bankr. N.D. Tex. 2008) (emphasis added) (citing BLACK'S LAW DICTIONARY 834 (7th ed. 1999); *Northrop Grumman Tech. Servs. v. Shaw Group Inc.* (*In re IT Group, Inc.*), 302 B.R. 483, 487 (D. Del. 2003)).

The termination language was effective under Arkansas law prior to the bankruptcy filing, and it did not contemplate a modification of the parties' positions based on a hypothetical bankruptcy filing. Thus, the termination language is not an ipso facto clause.

### IV. Conclusion

For the above-stated reasons, the Court finds that the Blue Hangar is not property of the debtor's bankruptcy estate, and that the debtor's possessory interest subject to a commissioner's sale is not a sufficient interest to prevent stay relief from being granted. Therefore, the Court grants both of FFB's motions for relief from stay.

IT IS SO ORDERED.

Honorable Bianca M. Rucker
United States Bankruptcy Judge
Dated: 05/16/2025

cc: Stanley V. Bond, attorney for debtor
　　Lance R. Miller, attorney for First Financial Bank
　　Beverly I. Brister, subchapter V trustee
　　United States Trustee